STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-10-2
WRA —PEN- 9/21/2010

JOSHUA TARDY, DANA
CONNORS and EDWARD
SKOVRON,

Petitioners,

v.

DECISION & ORDER ON
80C APPEAL

MAINE UNEMPLOYMENT
INSURANCE COMISSION,

Respondent.

The matter before the Court is an appeal by the Petitioners, Joshua Tardy, Dana

Connors and Edward Skovron, pursuant to 5 M.R.S. §§ 11001-11008 and 26 M.R.S.

§ 1226(1)(B), from a decision by the Respondent, Maine Unemployment Insurance

Commission ("Commission"), denying the petitioners request for reconsideration of

Commission Decision 09-E-90066. The petitioners' appeal concerns the Commission's

decision to hold them liable as "responsible individuals"[1] under 26 M.R.S. § 1225(1-A)

for unpaid unemployment taxes. Having reviewed the administrative record and the

parties' filings, the Court grants the petitioners' appeal.

---

[1] As used colloquially by the parties in this case, the term "responsible individual," when used to describe the petitioners' alleged status in this litigation, is bit of a misnomer. Section 1225(1-B) defines a "responsible individual" as the person "who generally is responsible for the control and management of that employer's funds or finances" or "the individual who is specifically responsible for the collection and paying over of that employers contribution." *Id.* Whether the Tax Division may impose liability on other individuals who actively participate in the management or control of a employer's finances when the employer fails to make required contributions to the Unemployment Compensation Fund, 26 M.R.S. 1141, is the subject of 26 M.R.S. 1225(1-A) and of the issues raised by this appeal. That is, certain employees may become "responsible" for unpaid contributions to the extent they participate in the financial dealings of the business or are otherwise obligated to see that contributions are made. *See* 26 M.R.S. 1225(1-A).

1

## BACKGROUND

In 2007, the Petitioners, Joshua Tardy, Dana Connors, and Edward Skovron, formed Tardy-Connors, LLC for the purposes of purchasing and operating Moosehead Furniture ("Moosehead") located in Monson, Maine. (Administrative Record at 38) [hereinafter R. at ___]. The parties do not dispute that Tardy-Connors, LLC, is a "member-managed" limited liability company and a legally existing business entity registered in Maine. During the time period relevant to this dispute, there was no board of directors, no managing member, and no member had greater authority to make financial or operational decisions than any other. (R. at 39, 41, 44.) Decisions had to be made by a majority of the stockholders. (R. at 41.)

After purchasing the business, the petitioners, by agreement, hired Dwain Allen to serve as the chief financial officer ("CFO") of Moosehead. (R. at 30-31, 38, 40, 45.) He is the only employee who could be described as an officer. (R. at 44). Allen had worked at Moosehead for 37 years prior to Tardy-Connor's purchase, having served previously as plant manager and as head of information and technology services. (R. at 38, 48.) The petitioners' delegated to Allen the general responsibility of managing "all of the accounts" relevant to the running of the business, including "funds, finances, [and] payroll." (R. at 38-9.)

Evident from the record, the petitioners also hired a person loosely characterized as a human resources professional to help manage payroll and other business accounts at Allen's direction. (R. at 40.) Allen, however, maintained ultimate authority over "check-writing for all of the payroll related issues." (R. at 39.)

2

After purchasing Moosehead, the petitioners in this action expanded the membership of Tardy-Connors, LLC, by adding four new members as minority investors. The addition of minority shareholders—Robert Morris, Outlook Associates, LLC, Jonathan Seavey, and Joe Bruno—in the investment/ownership group, lowered the petitioners' interest in the group to 26.66 percent each. (R. at 13, 45.) In November 2008, the members of Tardy-Connors, LLC became aware that Moosehead had failed to pay unemployment taxes in 2008. (R. at 29.) As a result, Tardy-Connors, LLC, relieved Allen of his duties as CFO and returned him to a position as plant manager of the Moosehead facility. (R. at 47.) After appointing another person to assume the CFO duties at Moosehead, who was relieved two weeks prior to the October 2009 hearing before the Commission, (Petr.'s Reply Br. at 1), petitioner Tardy agreed to handle the day-to-day financial operations of the company. (R. at 52.) Ultimately, Tardy-Connors, LLC, shut down production at Moosehead in September 2009. (R. at 46.)

The Bureau of Unemployment Compensation filed liens against Tardy-Connors, LLC, for unpaid unemployment taxes in April 2009 and mailed assessments of "individual" liability to the petitioners and the other shareholders. (R. at 74-97.) The individual members filed a timely appeal of their individualized assessments on May 20, 2009. The Commission held a hearing on October 27, 2009, and during the course of the hearing withdrew the assessments filed against Mr. Morris and Mr. Seavey—Seavey held a 10 percent share and Morris a 2.5 percent share in Tardy-Connors, LLC, respectively—based on information that these members of were mere passive investors without any influence whatsoever in the business dealings of Moosehead. (R. at 9, 64.)

On December 4, 2009, the Commission issued a written decision finding the petitioners to be "responsible individuals" within the ambit of 26-A M.R.S. § 1225(1-A), and therefore, jointly and severally liable for the unpaid unemployment taxes at issue in this action (R. at 8-10.) The petitioners requested the Commission to reconsider the December 2009 decision, but the Commission denied the request by written letter on January 22, 2009. The petitioners filed M.R. Civ. P. 80C appeal now before Court on February 18, 2010.

## STADARD OF REVIEW

The Court's review of petitioners' administrative appeal is confined by a deferential standard. Agency rulings may only be reversed or modified on M.R. Civ. P. 80C appeal upon a finding that the administrative ruling is: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by bias or by error of law; (5) unsupported by substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion. 5 M.R.S. § 11007(4)(C)(1)–(6); *see also Seider v. Board of Examiners of Examiners of Psychologists*, 2000 ME 206, ¶ 8, 695 A.2d 552, 555 ("The standard of review [on M.R. Civ. P. 80C appeal] is limited to whether the [governmental agency] abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record.") (internal quotation mark omitted) (citation omitted).

The petitioners specifically challenge the Commission's findings, affirming the assessment of the Tax Division, in holding each of them jointly and severally liable under 26 M.R.S. § 1225(1-A) for Moosehead's unpaid unemployment taxes. When reviewing

4

an agency's interpretation of a statute that is both administered by the agency and within the purview agency's expertise, the initial inquiry is whether the statute is ambiguous or unambiguous. *Competitive Energy Servs., LLC v. Pub. Utils. Comm'n*, 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046. If the statute is unambiguous, it is interpreted according to its plain meaning. *Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 11, 905 A.2d 285, 288. If, instead, the statute is ambiguous, the court will defer to the interpretation of the agency charged with its administration, so long as the agency's interpretation is reasonable. *Id.* (citation omitted); *see also Me. Ass'n of Health Plans v. Superintendent of Ins.*, 2007 ME 69, ¶ 42, 923 A.2d 918, 929. The petitioners carry the burden of demonstrating that the Commission's action was based on an error of law. *Fryeburg Health Care Center v. Dep't of Human Serv.*, 1999 ME 122, ¶ 7, 734 A.2d 1141, 1143.

## DISCUSSION

The parties agree that the Maine Department of Labor, Bureau of Unemployment Compensation Tax Division ("Tax Division"), may, under limited circumstances, hold certain officers, directors, or members of an employer individually liable for the unpaid unemployment taxes:

> The liability for contribution or fees and the interest or penalties due on the contributions are enforceable by assessment and collection, in the manner prescribed in this section, against an employer and against any officer, director or member of that employer who, in that capacity, is responsible for the control or management of the funds or finances of that employer or is responsible for the payment of that employer's contribution.

26 M.R.S § 1225(1-A). In affirming the Tax Division's assessment of the petitioners as "responsible individuals," the Commission relied largely on the testimony of petitioners

5

Tardy and Skovron.[2] The substance of the testimony suggested that the founding members of Tardy-Connors, LLC, shared a "collective" ability to control and manage the finances of Moosehead, but not necessarily that any one member of the group—Skovron, Tardy, or Connors—had exclusive authority to make financial decisions. (R. at 9.) Derivative of that finding, the Commission deemed the petitioners to have exposed themselves to the genus of tax liability contemplated by 26 M.R.S § 1225(1-A). For the reasons that follow, the Court finds the Commission's interpretation of 26 M.R.S. § 1225(1-A) unreasonable and grants the petitioners' M.R. Civ. P. 80C appeal.

To date, the Law Court has not rendered a decision requiring an interpretation of 26 M.R.S § 1225(1-A). The operative language of 26 M.R.S § 1225(1-A), however, is almost identical to the language found in 36 M.R.S. § 177(1), the statutory provision interpreted by the Law Court in *Prescott v. State Tax Assessor*, 1998 ME 250, 721 A.2d 169. Although the two statutory provisions apply in marginally different contexts, the *Prescott* decision helps guide the analysis insofar as the petitioners seek relief from the tax liability imputed from their status as "responsible individuals." *See id.* at ¶¶ 8-14, 721 A.2d 172-74 (relying on federal precedent to outline the factors used to determine whether an employee of a company can be held personally liable, under 36 M.R.S. § 177(1), for unpaid employment withholding taxes). Critical to the instant appeal, the petitioners dispute whether the language of 26 M.R.S § 1225(1-A) supports the Tax Division's assessment and the Commission's decision—that is, whether the "collective authority" allegedly exercised by the petitioners over the finances of Moosehead can translate into the "individual" tax liability contemplated by the statute.

---

[2] Petitioner Connors did not participate in the October 27, 2009, hearing before the Commission. The petitioners' counsel, however, indicated "that Mr. Connors' testimony would largely substantiate Mr. Tardy's." (R. at 54.)

The court must first ascertain the burden carried by the petitioners in this case. To that end, "once it is determined that there is a proper assessment, it is the assessed person's burden to show that he is not a 'responsible person.'" *Prescott*, 1998 ME 250, ¶ 9, 721 A.2d at 173 (quoting *Vinick v. Commissioner of Internal Revenue*, 110 F.3d 168, 171 (1st Cir. 1997)) (emphasis added). The phrase "proper assessment" does not appear in the First Circuit's *Vinick* decision, and to some extent, confuses the analysis here. This Court's review of the *Vinick* decision, however, discloses that once a person is assessed, presumably because of an employer's failed effort to make the tax payments, it inexorably becomes the assessed person's burden to disprove his "responsible individual" status. *Vinick*, 110 F.3d at 171; *Prescott*, 1998 ME 250, ¶ 9, 721 A.2d at 173. In neither *Vinick* nor *Precott* did the court, in fact, conduct an analysis of whether the assessment was "proper" before imposing the burden shift. From this, it would appear that an assessment is "proper" if all ministerial requirements are met.

Consonant with the general principles of statutory interpretation, the Court will "look first to the plain meaning of the statutory language to determine legislative intent." *Brent Leasing Co. v. State Tax Assessor*, 2001 ME 90, ¶ 6, 773 A.2d 457, 459. Section 1225(1-A) is not ambiguous in defining the group of persons who can incur individual liability for the unpaid unemployment contributions of a business. That group is composed of those individuals who have responsibility for the control or management of funds or finances of the employer or for the payment of the unemployment compensation contribution.

The petitioners argue that § 1225(1-A) can only reach "individuals" who have direct influence in the financial decisions of a company, and not those individuals who

7

possess authority or control an employer's finances only by virtue of collective action.

The petitioners' interpretation is based on the interpretation the Law Court has afforded

the term "responsible" in these circumstances:

> The determination of responsibility is a matter of status, duty, and authority, aimed at the ultimate determination of whether the person had the power to determine whether the taxes should be remitted or paid or had the final word as to what bills should or should not be paid and when.

*Prescott*, 1998 ME 250, ¶ 10, 721 A.2d at 172 (internal quotation marks omitted)

(citation omitted). As part of the calculus, the petitioners do not dispute that they were, in

fact, in equal positions of status and authority at Moosehead, both as the founders of

Tardy-Connors, LLC and as controlling (voting) members of a the ownership group (each

with a 26.66% interest in the LLC). Nor do the petitioners dispute that, collectively, they

were responsible for payment of the unemployment compensation tax. Noting that

Moosehead Furniture business decisions could only be made by majority vote, the

petitioners challenge whether any one of them could be singled out as a "responsible

person."

From the petitioners' own descriptions of how Tardy Connors, LLC, along with

CFO Dwaine Allen, managed the finances of Moosehead, the Commission ultimately

divined:

> [M]embers Tardy, Connors, and Skovron had ample opportunities to inquire of the C.F.O. about the company's liabilities, including its tax liabilities. Had they done so and accordingly learned of the outstanding tax debts[,] the three members collectively would have had the authority to order that the tax debts be satisfied. As in *Prescott*, neither the fact that the three members failed to exercise this authority nor the fact that they delegated financial responsibility to the C.F.O. negates a finding that they are responsible individuals.

8

(R. at 9) (emphasis added); *see Prescott*, 1998 ME 250, ¶ 14 721 A.2d. at 174 (noting that "delegating the responsibility for financial matters does not relieve the person of liability"). It is this finding that goes to the root of whether the Tax Division and subsequently, the Commission, perhaps misinterpreted the reach of 26-A M.R.S. § 1225(1-A). The petitioners argue that "responsible individual" liability cannot be premised upon collective authority. (Petr.'s Br. at 5.) In a similar vein, the petitioners contend that the Law Court's *Prescott* decision does not imply that "separate membership interests of LLC members may be combined in order to impose individual on each person so aggregated." (Petr.'s Br. at 5.) The Court agrees.

Extending liability for nonpayment of unemployment compensation taxes to any officer, director, or member of the employer who is "responsible for the control or management of the fund of finances or responsible for the payment of the employer's contribution" is an obvious attempt to encourage those who are "responsible" to pay the tax or cause the tax to be paid. Although it is clear that more than one person can be "responsible," the wording of the definition does not imply that people with collective decision-making authority are "responsible" simply because of their collective decision-making authority, as evidenced by the statute's use of the singular, "officer", "director" and "member", instead of the plural. To express a contrary intent, the statute could easily have referred to "officers", "directors" or "members." Because the status of each of the petitioners was equal and a majority vote of the three members was required to make a business decision, no single member was responsible for payment of the unemployment compensation tax. In other words, no single member had the authority to compel payment of the unemployment contributions.

Imposing individual tax liability for decisions that can only be accomplished by "collective authority" could yield absurd and unfair results. The fact that a particular member could advocate repeatedly and strongly for payment of the tax, only to be outvoted by the majority, would result in personal liability for that member, despite his or her efforts to ensure payment. More critically, such an eventuality points out that the individual member is neither "responsible for the control or management of the funds or finances of that employer" nor "responsible for the payment of that employer's contribution," as demonstrated by that member's inability to cause the tax to be paid.[3] Imposing individual liability for collective decisions also attenuates the concept of responsibility to an unreasonable degree, especially with regard to a member managed LLC with a large number of members.

Treating each member exactly the same because each has collective decision making authority can cause an injustice to the individual. An examination of the testimony received during the October 2009 hearing clearly shows that petitioner Skovron, in fact, exercised no decision making authority over the day to day, week to week, or even month to month operations, financial or otherwise, of the company. There is no indication of the extent of petitioner Connors' involvement in company operations, while petitioner Tardy was obviously more aware, in a general sense, of operational issues than the others. Imposing individual liability in this case has the effect of treating all members the same, despite the existence of significant differences of knowledge of operations, because of the collective entity's authority. Finding each individually liable

---

[3] Although there is no evidence of such a scenario in this case, it is not unreasonable to envision such a situation arising. When a company is failing and faced with decisions on whether to pay suppliers in order to continue to conduct business or to pay governmental obligations such as pay roll taxes or unemployment compensation taxes, ethical LLC members may have differing views on what obligations should be paid.

for payment of the tax could be construed as a punishment for hiring a CFO who failed to pay the tax, rather than a penalty arising out of the responsibility of each petitioner, individually, for failing to cause the tax to be paid. Individual liability should be based on individual authority and responsibility, absent in this case.

Based on this analysis, this Court grants petitioners' appeal. The relevant statute, 26 M.R.S.A. § 12225(1-A) is unambiguous and the Commission has not interpreted the statute according to its plain meaning. By imposing liability for payment of Moosehead Furniture's unemployment compensation contributions on the petitioners individually, the Commission misconstrued the reach of the statute. The "collective authority" that enabled the petitioners to make business decisions for the company does not expose them to the type of individual tax liability found by the Commission.

The entry is:

1. Petitioners', Joshua Tardy, Dana Connors and Edward Skovron, M.R. Civ. P. 80C appeal is **GRANTED**.

2. This order is incorporated into the docket pursuant to M.R. Civ. P. 79(a).

Date: September 21, 2010

William R. Anderson
Justice, Superior Court

11

Date Filed __February 18, 2010__ __PENOBSCOT_____ Docket No. __AP-2010-2_____

County

Action ___80C APPEAL_____

ASSIGNED TO JUSTICE WILLIAM R. ANDERSON

| | |
|---|---|
| JOSHUA TARDY,<br>DANA CONNORS, &<br>EDWARD SKOVRON | STATE OF MAINE, UNEMPLOYMENT INSURANCE<br>COMMISSION<br><br>vs. |

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Irwin, Tardy & Morris<br>159 Main Street<br>P O Box 476<br>Newport, Maine 04953<br>By: William Logan, Esq. | Elizabeth J. Wyman A.A.G<br>Office of the Attorney General<br>6 State House Station<br>Augusta ME  04333-0006 |

| Date of<br>Entry | |
|---|---|
| 2/18/10 | Petition for Review of Final  Agency Action filed by Petitioners. |
| 2/24/10 | Notice of Assigned Justice forwarded to attorney for Plaintiff. |
| 2/26/10 | Entry of Appearance filed by Elizabeth Wyman, AAG on behalf of Maine Unempoyment Commission, and position that the Court should affirm the decision of the Commission. |
| 3/5/10 | Copy of Notice of Assigned Justice forwarded to Elizabeth J. Wyman, AAG. |
| 3/17/10 | Certified copy of Administrative Record filed by Respondent. |
| 3/17/09 | Notice and Briefing Schedule 80C Appeal of Final Agency Actions forwarded to attorneys of record. |
| 4/26/10 | Brief of Petitioners filed. |
| 5/25/10 | Brief of Respondent Maine Unemployment Insurance Commission filed. |
| 6/8/10 | Reply Brief of the Petitioners filed by William Logan, Esq. |
| 9/22/10 | On 9/21/10 Decision & Order on 80C Appeal entered. (J. Anderson). The entry is: 1. Petitioners', Joshua Tardy, Dana Connors and Edward Skovron, M.R.Civ.P.80C appeal is GRANTED. 2. This order is incorporated into the docket pursuant to M.R.Civ.P.79(a). |
| 9/22/10 | Clerk's entry: appeal granted. |